UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KRISTINA D. B.,                        )
                                       )
            Plaintiff                  )
                                       )
v.                                     )    No. 1:18-cv-00088-JHR
                                       )
NANCY A. BERRYHILL,                    )
Acting Commissioner of Social Security,)
                                       )
            Defendant                  )

*MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a medical coder or, in the alternative, other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) deeming her thyroid impairment nonsevere, (ii) failing to capture all limitations flowing from her atrial fibrillation and cardiomyopathy in assessing her physical residual functional capacity ("RFC"), (iii) providing no explanation of the extent to which she assessed obesity-related limitations, (iv) construing raw medical evidence in determining her mental RFC, and (v) relying on flawed testimony of a vocational expert ("VE"). *See* Statement of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

Specific Errors ("Statement of Errors") (ECF No. 13) at 1-20. I find no reversible error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 56; that she had the severe impairments of atrial fibrillation, cardiomyopathy, morbid obesity status post gastric bypass, major depressive disorder, and borderline personality disorder, Finding 3, *id*.; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the additional limitations that she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, and crawl, needed to avoid concentrated exposure to respiratory irritants such as perfume, ragweed, dust, fumes, and mold, could not work with sharp objects, and could interact on a superficial basis with coworkers, the general public, and supervisors, Finding 5, *id*. at 59; that she could perform past relevant work as a medical coder, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 63; that, in the alternative, considering her age (48 years old, defined as a younger individual, on her alleged disability onset date, February 15, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 64; and that she, therefore, had not been disabled from February 15, 2013, her alleged onset date of disability, through the date of the decision, November 29, 2016, Finding 7, *id*. at 65. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Step 2: Finding of Nonsevere Thyroid Impairment

The ALJ deemed the plaintiff's hyperthyroidism nonsevere, explaining that, "aside from requiring medication management, there is no indication that th[is] condition[] result[ed] in any functional limitations." Record at 57.

3

The plaintiff challenges this finding on the bases that (i) her hyperthyroidism contributed to her atrial fibrillation and cardiomyopathy and required multiple medication adjustments from December 2014 through March 2016, when it was finally brought under control, (ii) agency nonexamining consultant J.H. Hall, M.D., who reviewed her case on reconsideration on January 23, 2015, deemed her hyperthyroidism severe, and, (iii) yet, the ALJ rejected the Hall opinion in favor of that of agency nonexamining consultant John MacEachran, M.D., who assessed her case on initial review on August 7, 2014, before her hyperthyroidism was even diagnosed. *See* Statement of Errors at 2-4; Record at 196, 198-99, 222, 225-27.

Mindful of this court's admonishment that "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim[,]" *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010), the plaintiff contends that the error is harmful because, whereas Dr. MacEachran deemed her capable of light work, Dr. Hall deemed her capable only of sedentary work for the period after December 31, 2014. *See* Statement of Errors at 4; Record at 198-99, 219, 225-27.

Nonetheless, as the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 2-4, any error is harmless. Because, at Step 4, the ALJ deemed the plaintiff capable of returning to past relevant work as a medical coder, which is classified as sedentary, *see* Record at 63, her adoption of the Hall opinion limiting the plaintiff to sedentary work would have made no difference. While the plaintiff separately challenges the ALJ's reliance on the VE's testimony concerning that job, *see* Statement of Errors at 18-19, that challenge is unavailing for the reasons discussed below.

### B. Step 4: Limitations from Atrial Fibrillation, Cardiomyopathy

The plaintiff next argues that the ALJ failed to capture the full panoply of her limitations stemming from her severe impairments of atrial fibrillation and cardiomyopathy when she adopted the opinion of Dr. MacEachern over that of Dr. Hall. *See id*. at 5-10. She contends that, in so doing, the ALJ necessarily interpreted the raw medical evidence unseen by Dr. MacEachern. *See id*. at 10. However, as discussed above, the adoption of the Hall opinion would not have changed the ALJ's determination that the plaintiff retained the capacity to perform past relevant work as a medical coder. Any error, accordingly, is harmless.

### C. Step 4: Limitations from Obesity

The ALJ stated that, although the plaintiff had attributed symptoms of dizziness, loss of balance, and fatigue to her cardiac condition rather than to her weight or weight-loss surgery, "as a precaution, the [plaintiff]'s weight, including the impact on her ability to ambulate as well as on her other body systems, has been considered in determining the functional limitations identified above by limiting [her] to performing light work." Record at 61.

The plaintiff asserts that this vague discussion transgressed the requirement of Social Security Ruling 02-1p ("SSR 02-1p"), as construed in *Fothergill v. Astrue*, No. 2:11-cv-247-DBH, 2012 WL 1098444 (D. Me. Mar. 29, 2012) (rec. dec., *aff'd* Apr. 17, 2012), and *Kaylor v. Astrue*, No. 2:10-cv-33-GZS, 2010 WL 5776375 (D. Me. Dec. 30, 2010) (rec. dec., *aff'd* Feb. 7, 2011), that an ALJ clarify the functional limitations assessed to account for a severe obesity impairment. *See* Statement of Errors at 10-12.

As the commissioner persuasively argues, *see* Opposition at 8-9, however, this case is distinguishable from *Fothergill* and *Kaylor* in that, here, the ALJ relied on the opinion of an expert who had expressly accounted for obesity, Dr. MacEachern. Dr. MacEachern deemed the plaintiff's

5

obesity severe and explained that he assessed postural limitations to account for her "[b]ody habitus" as well as her "mild nonischemic cardiomyopathy." Record at 196, 198-99. By contrast, in *Fothergill*, neither of the agency nonexamining consultants on whose opinions the ALJ relied "identified obesity as among the [claimant]'s diagnosed impairments" or "stated that his RFC opinion reflected the effects of obesity," *Fothergill*, 2012 WL 1098444, at *3, and in *Kaylor*, the ALJ eschewed reliance on any expert opinion in assessing the claimant's physical RFC, *see Kaylor*, 2010 WL 5776375, at *4.

As the commissioner notes, *see* Opposition at 8, "because the [ALJ] took into account the effects of obesity by virtue of h[er] reliance on the [MacEachern] opinion, the burden shifted to the plaintiff to demonstrate additional limitations that [s]he claims were omitted," *Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *3 (D. Me. May 8, 2014). The plaintiff fails to do so, *see* Statement of Errors at 10-12, rendering any error harmless.

### D. Step 4: Limitations from Depression, Personality Disorder

The record contained two expert opinions concerning the plaintiff's mental impairments, those of agency nonexamining consultants Peter G. Allen, Ph.D., on initial review, and David R. Houston, Ph.D., on reconsideration, that those impairments were nonsevere. *See* Record at 196-97, 222-23. The ALJ gave both opinions little weight, explaining, "While the weight of the evidence outlined within this decision does not support finding functional limitations flowing from the [plaintiff]'s mental impairments beyond those outlined in the [RFC], it does support finding that [her] depressive and borderline personality disorders are severe within the meaning of the regulations." *Id*. at 63. She included a finding in her RFC determination that the plaintiff could "interact on a superficial basis with coworkers, general public, and supervisors." Finding 5, *id*. at 59.

The plaintiff contends that here, as in *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), the ALJ effectively conceded that the agency nonexamining consultants' opinions could not stand as substantial evidence and went on to devise a mental RFC lacking any record support. *See* Statement of Errors at 15.

The commissioner distinguishes *Lisa Staples* on the basis that, in this case, it is reasonably apparent that the ALJ did not construe raw medical evidence but, rather, gave the plaintiff the benefit of the doubt by crediting some of her subjective allegations of difficulties in social functioning. *See* Opposition at 9-13. The commissioner has the better argument.

In finding that the plaintiff had moderate difficulties in social functioning, the ALJ observed that "*all evidence* suggests that, when [the plaintiff] does interact with others, she does so appropriately[,] without anger, agitation or unusual behaviors." Record at 58 (emphasis added). However, she explained that, "[g]iving some credit to the [plaintiff]'s allegation of social deficit, I have made some accommodations for reduced capacity in social functioning." *Id*. Later, in discussing her addition of "a limitation relating to social interactions" in the RFC, she explained: "The [plaintiff]'s allegations have been given credit to the maximum extent within the bounds of this medical record." *Id*. at 62. Finally, she noted that her RFC determination, as a whole, was supported by "the objective medical evidence, the opinions of the medical professionals cited, and the [plaintiff]'s subjective complaints." *Id*. at 63.

As the commissioner contends, *see* Opposition at 11-13, this case aligns more closely with *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116 (D. Me. Sept. 22, 2017) (rec. dec., *aff'd* Mar. 28, 2018), and *Starrett v. Colvin*, No. 2:14-cv-152-JHR, 2015 WL 3966127 (D. Me. June 29, 2015), than with *Lisa Staples*.

In this case, as in *Black* and *Starrett*, it is reasonably clear that the ALJ credited statements by the plaintiff, rather than construing the raw medical evidence, to arrive at her mental RFC determination. *See Black*, 2017 WL 4220116, at *7 (ALJ based mental limitations on partial crediting of claimant's own statements and those of his girlfriend, citing claimant's own allegations in finding moderate difficulties in social functioning, stating he gave some weight to the plaintiff's girlfriend's third-party report, and explaining that his RFC determination was supported, in part, by the hearing testimony and third-party witness statements); *Starrett*, 2015 WL 3966127, at *4 (ALJ "expressly stated that he deviated from the expert opinions, restricting the [claimant] to work at a sedentary exertional level," based on claimant's work history and credible testimony that he found his construction and forklift jobs too strenuous).

"It is not error to assess restrictions more favorable to a claimant than those set forth by medical experts on the basis of the adoption of a claimant's own testimony." *Starrett*, 2015 WL 3966127, at *4. Remand, accordingly, is unwarranted on the basis of this point of error.

### E.  Steps 4 and 5: Reliance on VE Testimony

The plaintiff, lastly, argues that the ALJ erred in relying on the testimony of the VE because she (i) posed questions to the VE predicated on her flawed RFC determination, (ii) failed to identify and resolve conflicts between the VE's testimony and the *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT"), undermining her finding that the plaintiff was capable of performing past relevant work as a medical coder, and (iii) relied, in deeming the plaintiff capable of performing other work, on the VE's response to a hypothetical question that did not correspond to her RFC determination. *See* Statement of Errors at 15-20.

The success of the first point hinges on that of the plaintiff's earlier arguments that the ALJ erred in determining her RFC. *See id*. at 15-16. Because, for the reasons discussed above, the

8

plaintiff's challenges to the ALJ's physical and mental RFC findings fall short, this derivative argument likewise fails. I need not reach the third point because I conclude that the second point is without merit and, hence, the ALJ properly deemed the plaintiff capable of returning to her past relevant work as a medical coder.

The VE testified that a person who, *inter alia*, had "the ability to interact on a brief superficial basis with coworkers and the general public and supervisors" would be able to perform the job of medical coder, DOT § 214.362-022. Record at 186-87. The plaintiff's counsel was afforded the opportunity to question the VE, and availed himself of it. *See id*. at 189. The ALJ then asked the VE whether there was "any conflict between anything you testified to today and the DOT." The VE responded: "No conflict, but there were areas that I testified to that were not covered in the DOT[,] [a]nd this would be the issues of absenteeism, off task behavior and breaks outside of the normal breaks." *Id*. at 190.

The plaintiff contends that the ALJ's reliance on this testimony was misplaced because, in violation of Social Security Ruling 00-4p ("SSR 00-4p"), she failed to identify and resolve a conflict between her stated limitations on social interaction and the job of medical coder as described in the DOT. *See* Statement of Errors at 16-19. SSR 00-4p provides, in relevant part:

The Responsibility To Ask About Conflicts

When a VE or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

• Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

• If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018), at 244.

The plaintiff argues that the ALJ failed to identify an inconsistency between the limitation against more than brief, superficial interaction with coworkers, the general public, and supervisors, and the DOT's rating of "People . . . Speaking-Signaling" as "significant" to the medical coder job. Statement of Errors at 18-19; DOT § 214.362-022. She notes that "Speaking-Signaling" is defined as "[t]alking with and/or signaling people to convey or exchange information" and "[i]includes giving assignments and/or directions to helpers or assistants." Statement of Errors at 18-19 (quoting Appendix B to DOT). Nonetheless, as counsel for the commissioner rejoined at oral argument, the plaintiff waived this issue by failing to raise it at hearing.

"There is an expectation that counsel will explore . . . concerns with the [VE] at the hearing, not leave such matters to technical challenges before the courts." *Baker v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694, at *5 (D. Me. Mar. 31, 2011) (rec. dec., *aff'd* Apr. 19, 2011).

This court has held that SSR 00-4p "imposes an *affirmative obligation* on [ALJs] to (i) inquire whether there is any conflict between [VE] testimony and the DOT, (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified." *Burton v. Astrue*, No. 2:11-cv-174-GZS, 2012 WL 1184425, at *4 (D. Me. Apr. 6, 2012) (rec. dec., *aff'd* Apr. 24, 2012) (emphasis in original).

However, this court has also held that, "because SSR 00-4p pertains only to *apparent* conflicts, a claimant waives a claim of failure to identify and resolve a conflict between [VE] testimony and the DOT unless he or she 'can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance[.]'" *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012) (rec. dec., *aff'd* July 31, 2012) (quoting *Burton*, 2012 WL 1184425, at *4 n.3) (emphasis in original).

As counsel for the commissioner noted, the plaintiff's counsel did not cross-examine the VE at hearing regarding this point. *See* Record at 189. Counsel for the commissioner contended that the purported conflict at issue here was not obvious enough that the ALJ should have picked up on it without any assistance, particularly given the VE's assurance that no conflicts existed. The plaintiff's counsel did not argue, nor do I find, that the purported conflict was sufficiently obvious to trigger this duty. The plaintiff relies not on the DOT's description of the job, but on secondary and tertiary information contained in the fifth digit of the occupational code (People) and sixth category of that digit (Speaking-Signaling). *See* Statement of Errors at 18-19. It is not apparent that a limitation to either "brief" or "superficial" interactions conflicts with the generic definition of "People"/"Speaking Signaling," which does not address either the length or quality of such interactions in the job at issue, medical coder.[2]

The ALJ, hence, properly relied on the VE's testimony that a person with the stated limitation on social interactions could perform that job.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

---

[2] In setting forth her RFC determination, the ALJ omitted the limitation to "brief" social interactions. *See* Finding 5, Record at 59. Regardless of whether that limitation was intentionally omitted, any error is harmless. The VE's testimony supports the finding that a person with or without that additional limitation could perform the job of medical coder. *See id*. at 187.

11

Dated this 28th day of March, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge